BRANSCUM *v.* STATE.

Opinion delivered April 22, 1918.

1.  JURY—QUALIFICATION OF JURYMAN.—In a prosecution for homicide, where it did not appear that certain veniremen entertained any prejudice against the defendant, and it did appear that the opinions held by them were based upon rumor, and each stated in response to questions by the court that he could and would base his verdict solely on the testimony, the trial court properly held the jurors competent to serve.
2.  WITNESS—RECALLING WITNESS—DISCRETION OF COURT.—In a criminal prosecution where the defendant has had ample opportunity to cross-examine a witness introduced by the State, the court has a

discretion to refuse to permit defendant to later recall the witness for the purpose of impeaching him.

3. HOMICIDE—SELF-DEFENSE.—In a prosecution for homicide an instruction telling the jury that they must find what picture was in defendant's mind at the time of the killing, he acting in good faith and as a reasonably prudent person; that if from that picture it did not appear to defendant that he was in great danger of losing his life, or of receiving great bodily harm, then the right to kill did not exist, *held* proper.

4. HOMICIDE—SUFFICIENCY OF THE EVIDENCE.—The evidence *held* sufficient to warrant a conviction of second degree murder.

Appeal from Stone Circuit Court; *Dene H. Coleman,* Judge; affirmed.

Appellant, *pro se.*

1. Britton and McCallester were not competent jurors.· They had a fixed opinion as to the guilt or innocence of defendant. 79 Ark. 127; 102 *Id.* 180; 91 *Id.* 582.

2. It was error to refuse instruction No. 1 asked. 85 Ark. 51; 12 Cyc. 751; 21 *Id.* 796-816; 59 Ark. 132; 170 S. W. 235; 172 *Id.* 1025; 120 Ark. 202.

3. It was error to give No. 13. 59 Ark. 132; 120 *Id.* 202; 62 *Id.* 307; 85 *Id.* 48; 80 *Id.* 87; 55 *Id.* 397; 67 *Id.* 603; 72 *Id.* 438; 91 *Id.* 576; 93 *Id.* 414; 109 *Id.* 515; 12 Cyc. 751; 21 *Id.* 797-816; 13 R. C. L. 816.

4. John Pearce's testimony should have been admitted. Kirby's Digest, § 3139; 37 Ark. 324; 52 *Id.* 303; 72 *Id.* 412; 82 *Id.* 61; 99 *Id.* 615; 21 Cyc. 895.

5. The verdict is against the evidence. All the facts and circumstances make a clear case of self-defense.

*John D. Arbuckle,* Attorney General, and *T. W. Campbell,* Assistant, for appellee.

1. Britton and McCallister were competent jurors. 120 Ark. 470; 114 *Id.* 472; 109 *Id.* 450; 104 *Id.* 616, and others.

2. Instruction 1 was properly refused. The whole law of self-defense was given in No. 13.

3. It was entirely within the discretion of the court to admit or reject Pearse's testimony on recall. 34 Ark. 383; 68 *Id.* 587; 54 *Id.* 124, etc.

4. The evidence is ample to sustain the verdict. The plea of self-defense was without merit.

SMITH, J. (1) This appeal is prosecuted to reverse the judgment of the court below pronounced upon the verdict of the jury finding appellant guilty of murder in the second degree. The punishment was left by the jury to be fixed by the court. In impaneling the jury the court held Arthur Brittain and Leonard McAllister to be competent jurors, and exceptions were saved to that ruling on the ground that they were shown to have such fixed opinions concerning appellant's guilt as to render them incompetent. The jurors were examined at length by attorneys representing the State and the appellant and thereafter by the court. The answers of these veniremen were very similar on their *voir dire;* but there appears to be more question about the competency of Brittain than there was about McAllister. No attempt was made to show that either venireman entertained any prejudice against appellant, and it appears that the opinions entertained were based upon rumor and each stated in response to questions by the court that he could and would base his verdict solely on the testimony, and the court, therefore, properly held the jurors competent to serve as such. *Dewein* v. *State,* 114 Ark. 472.

(2) A witness named Pearce gave damaging testimony against appellant, and an exception was saved to the refusal of the court to permit appellant to recall that witness and ask him a question which would have tended to show prejudice against the appellant. It appears, however, that the witness had been cross-examined at length by appellant and the State had closed its case and had rested and appellant had put on a portion of his

testimony when the request was made. The trial court must necessarily have a discretion in such matters, and as full opportunity for the cross-examination of the witness was afforded before the State's case was closed, no abuse of discretion appears in the refusal to recall the witness for further cross-examination thereafter.

Error is assigned in the refusal of the court to give an instruction numbered 1 requested by appellant which dealt with appellant's right to act under the circumstances as they appeared to him. The instruction, however, did not require that appellant should have acted "without fault or carelessness on his part," and it was, therefore, properly refused.

The court gave over appellant's objection the following instruction: "The defendant in entering his plea of not guilty seeks to justify the killing in this case by alleging that he killed Ben Lacewell in his necessary self-defense.

"The defense of justification as claimed by the defendant turns upon the answer to one question, and that is, What was Ben Lacewell doing at the time the defendant fired the fatal shot or shots?

"To establish the plea of self-defense, you must find that, at the time the fatal shot or shots were fired, that there was some conduct on the part of Ben Lacewell, some overt act, some demonstration or apparent demonstration which induced in the mind of the defendant, James Branscum, while acting in good faith and as a reasonably prudent person under all circumstances surrounding the fatal encounter, as they then appeared to him, an honest belief that he was in great danger of losing his life, or of receiving great bodily harm. But a mere honest belief on the part of James Branscum that the killing was necessary is not sufficient; in addition to that, it must appear that the circumstances were such as made it reasonable for him to entertain such belief as the circumstances appeared to him acting as a reasonable person."

(3)   It is urged that this instruction makes the conduct of the deceased determinative of appellant's right to fire the fatal shot and leaves out of consideration the question of appellant's belief as to the action the deceased was about to take.   Such, however, is not its effect when the entire instruction is considered together, for while it does say that the defense of justification turns upon the answer to the question, What was the deceased doing at the time the fatal shot was fired? yet the instruction as a whole makes it plain that the conduct of the deceased referred to was that induced in the mind of appellant while acting in good faith.   In other words, it tells the jury to find what picture was in the mind of appellant acting in good faith and as a reasonably prudent person.   If from that picture it did not appear to appellant that he was in great danger of losing his life or of receiving great bodily harm then the right to kill did not exist and the instruction so declared the law, and it is not, therefore, open to the objection made to it.

(4)   It is finally insisted that the testimony is not sufficient to support the verdict.   But the testimony of a witness named Guthrie meets the requirement of the law in this respect.   He testified in part as follows: "And there was some words passed there, I don't know exactly the words they used—don't know just what words were passed.   Anyway, I looked up as Mr. Branscum came out with this pistol; had the pistol in his right hand and he taken his left hand and pushed the safety down on it. And I jumped up from where I was sitting and jumped out to one side, and I hallooed, I says, 'Don't do that,' and he commenced shooting."   And, in answer to the question, "What was Lacewell doing?" that witness answered, "Well, I jumped back and turned around to look at Lacewell, and he was just standing there."

There was testimony to support the finding that appellant was armed and deceased was not armed.   That the men had previously quarreled and that appellant was expecting the quarrel to be renewed.   It is true there

w.as testimony that deceased renewed the difficulty by asking appellant if he could "two-time" certain statements which the deceased accused him of having made; but there was also testimony that appellant accepted the challenge by replying, "I can two-time anything I ever said about you," and that he immediately drew his pistol and commenced firing. It is true that appellant was justified in firing the fatal shot according to his own testimony and that offered in his behalf; but the conflicts have been resolved against appellant by the verdict of the jury.

No error appearing, the judgment is affirmed.